

November 30, 2016

**VIA E-FILING**
The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Room 6124, Unit 26
Wilmington, DE 19801-3556

**FILED UNDER SEAL**

RE:   *Intellectual Ventures I LLC, et al. v. AT&T Mobility, LLC, et al.,*
       **(C.A. Nos. 13-cv-1668-1672-LPS)**

Dear Chief Judge Stark:

Defendants failed to provide substantive non-infringement contentions until the last day of fact discovery, prejudicing IV's preparation of its expert report. When IV's expert reviewed the late non-infringement contentions, he determined that given Defendants' position, the infringement theory for dependent claim 2 of U.S. Patent No. 6,640,248 (the "'248 Patent") also applied to independent claim 1. IV submitted the report on that basis.

Defendants have been on notice of the theory and relevant evidence at issue for many months, and they should not be rewarded for their dilatory tactics. The motion should be denied for three independent reasons: (1) Defendants have been on notice of the theory and evidence they seek to strike since IV served its initial infringement contentions at the beginning of 2015; (2) there is no prejudice to the Defendants, given that responsive expert reports have not been served; and (3) Defendants have failed to address the *Pennypack* factors all of which favor denying the motion.

**I.   Dr. Moon's Report Relies on a Theory and Evidence Disclosed During Discovery That Responds to Defendants' Last Minute Non-Infringement Contentions**

IV filed suit in October 2013. *See* D.I. 1.[1] On February 2, 2015, IV served its initial infringement contentions for the '248 Patent. Ex. 1. The '248 Patent generally relates to allocating wireless resources to packets based on the quality of service requirements of different application types, *e.g.* voice over LTE, web browsing, etc. In its initial contentions, IV asserted [REDACTED] *Id.* Claim 2, which is dependent on claim 1, recites that "resource allocation is based on input from at least one of: a packet header; and a software application communication to said MAC layer." *Id.* at 13. In its initial infringement contentions,

---

[1] Unless otherwise noted, all docket numbers refer to the docket of Case No. 13-cv-1668-LPS.

IV identified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as information from the packet header used as a basis for resource allocation in the specific embodiment of claim 2. *Id.* at 13-16 ("Because the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ satisfies a packet header that provides input upon which resource allocation is based."). There was no need to specifically reference the ▮▮▮ in relation to the broader claim 1.

The Court held a claim construction hearing on April 4, 2016, and issued its claim construction ruling on August 12. *See* D.I. 378, 379. As permitted by the Scheduling Order (D.I. 90, 132, 360), IV provided final infringement contentions two weeks later, on August 26. Again, IV identified the ▮▮▮▮ in claim 1 as showing application awareness and the ▮▮▮ in claim 2 as specific information from the packet header used as a basis for resource allocation. As of August 26, 2016, Defendants had not disputed that ▮▮▮▮▮ demonstrated application awareness under any proposed construction, despite having been served an interrogatory seeking Defendants non-infringement contentions more than 17 months before IV served its final infringement contentions. In fact, as explained below, Defendants provided no meaningful non-infringement contentions until the close of discovery.

On April 6, 2015, Defendants provided their initial answer to IV's Interrogatory No. 1, which requested detailed non-infringement contentions. Ex. 2. Defendants non-infringement position at that time consisted of a single page arguing, without explanation, that Defendants did "not infringe[], and do[] not infringe, any claim of the asserted patents at least because the accused instrumentalities do not practice every element of any of the asserted claims literally or under the doctrine of equivalents." *Id.* at 7. On January 15, 2016, nearly a year after IV served its initial infringement contentions, Defendants supplemented their response to Interrogatory No. 1. Ex. 3. However, rather than provide any meaningful response, Defendants' supplemental response merely recited the limitations they contended were not infringed, including every limitation of claims 1 and 2 of the '248 Patent again without any analysis. Ex. 3 at 14-15. Defendants did not supplement their response to Interrogatory No. 1 again until they sent a letter on September 15, 2016 and served a supplemental interrogatory response, incorporating that letter by reference, the next day, *i.e.* the last two days of discovery. Ex. 4 and 5. In these last minute contentions, Defendants argued for the first time that their use of ▮▮▮▮▮ did not meet the Court's construction of "an application-aware resource allocator" because it did not constitute taking "into account, when allocating bandwidth, information about applications at International Standards Organization's Open System's Interworking (OSI) application layer 7." Ex. 4 at 1-2.

Without giving IV an opportunity to respond to these new non-infringement contentions, Defendants then filed a thinly-veiled summary judgment motion—nominally titled a "motion to strike"—asking the Court to preemptively reject IV's infringement theories. D.I. 439. On September 28, 2016, two weeks after Defendants supplemented their non-infringement contentions and during the motion to strike meet and confer process, IV informed Defendants that even if Defendants interpretation of the Court's claim construction were correct, which it is not, Defendants' use of ▮▮▮ as set forth in claim 2, proved infringement of claim 1. Ex. 6 at 3. IV explained its position again in its opposition to Defendants' motion to strike and Dr. Moon provided a timely report on the subject. *See* D.I. 447 at 3 and D.I. 478, Defs' Ex. 1 at ¶ 119 ("Thus, even under Defendants' interpretation of this claim, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ eNodeBs literally infringe.").

2

Dr. Moon's opinion and IV's opposition to Defendants' motion to strike is directly responsive to Defendants' last minute non-infringement contentions. Had Defendants timely supplemented their contentions, IV would have had the opportunity during discovery to address them. Having waited until the very end of discovery to provide actual non-infringement contentions, however, Defendants cannot complain that IV identified evidence to rebut Defendants' claim. That is particularly so here, where IV had already cited the evidence in connection with dependent Claim 2. IV and Dr. Moon, therefore, had good cause to supplement their infringement contentions for claim 1 with evidence and theories from dependent claim 2. On the other hand, the Court should not reward Defendants for their delay by striking portions of Dr. Moon's report, thereby, effectively prohibiting IV from responding to Defendants' contentions.

## II.     Dr. Moon's Report Should Not Be Stricken under the *Pennypack* Factors

When deciding whether to strike an expert's opinion, Third Circuit courts weigh the *Pennypack* factors: "(1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the Court's order; (5) the explanation for the failure to disclose; and (6) the importance of the testimony sought to be excluded." *Withrow v. Spears*, 967 F. Supp. 2d 982, 1000-01 (D. Del. 2013), *citing Myers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3rd Cir. 1977). "Exclusion of 'critical evidence,' such as an expert report on infringement, is an 'extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence[.]'" *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 763 F. Supp. 2d. 671, 692 (D. Del. 2010) (*quoting In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994)).

Defendants' motion does not mention the *Pennypack* factors, much less explain how they support the extreme remedy Defendants seek. For this reason alone, Defendants' have not met their burden, and their motion should be denied. Furthermore, Defendants should not be permitted to make new arguments in a reply to which IV has no right of response.

### 1.     Factor 1: Defendants Suffered No Prejudice or Surprise Because Dr. Moon's Opinion is Responsive to the Non-Infringement Contentions Raised First at the Close of Discovery

Defendants have failed to show the willful deception, bad faith or incurable prejudice justifying the drastic sanction they seek. *See Withrow*, 967 F. Supp. 2d at 1007-08 (denying motion to strike expert report because the *Pennypack* factors weighed against the "extreme sanction"); *see also EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 102-02 (D. Del. 2016) ("The Pennypack factors militate against striking the Li and Jestice declaration and exhibits thereto."); *Lambda Optical Sols., LLC v. Alcatel-Lucent USA Inc.*, C.A. No. 10-487-RGA, 2013 WL 1776104, at *9 (D. Del. April 17, 2013 ("[A]ll or nearly all of the Pennypack factors militate in favor of a conclusion that, even if Alcatel did fail to timely disclose information responsive to the interrogatory at issue, such failure was harmless and was substantially justified under the meaning of the law."). As explained above, Defendants delayed providing substantive non-infringement contentions until the close of fact discovery. Defendants cannot be surprised that Dr. Moon responded to their newly identified contention. Indeed, IV informed Defendants that it

3

would rely on ▇ to rebut Defendants' contentions just two weeks after Defendants first identified the purported deficiency. *See* Ex. 6 at 3.

Moreover, Dr. Moon's opinion is not new. The ▇ theory has been in the case since January 2015. In its initial and final infringement contentions, IV argued that resource allocation, *i.e.* allocating bandwidth, as required by claim 2 is based on input from ▇ which is in the packet header. Ex. 1 at 13-16 and D.I. 478, Defs' Ex. 2 at 27-31. Dr. Moon opined with respect to claim 1 that ▇ which is located in the packet header, is information about applications from OSI layer 7 that is taken into account when allocating bandwidth. D.I. 478, Defs' Ex. 1 at ¶¶ 97 and 111-120. The only difference between IV's contentions and Dr. Moon's opinion regarding ▇ is that Dr. Moon's opinion relies on ▇ for claims 1 and 2 while the infringement contentions discuss ▇ explicitly, only in claim 2, a claim dependent on claim 1. The theory, whether with respect to claim 1 or with respect to claim 2, is the same. Namely, allocation of bandwidth is based on ▇ information in the packet header. Dr. Moon's opinion relies on no new theory or new evidence that was not disclosed during discovery.

2. **Factor 2: Defendants Suffered No Prejudice To Be Cured**

As explained above, Dr. Moon's opinion regarding ▇ is not new. Rather, the theory and the facts supporting it have been in the case since the outset. Defendants nevertheless contend they are prejudiced by their inability to procure rebuttal non-infringement evidence and in their selection of prior art references. *See* D.I. 478, Defs' Letter at 2. The Court should reject Defendants' conclusory argument. Dr. Moon's infringement opinion with respect to ▇ simply incorporates an argument from dependent claim 2 into independent claim 1. The theory is the same, *i.e.*, ▇ obtained from the packet header is taken into account when allocating bandwidth. Thus, any evidence Defendants' procured to rebut IV's infringement contentions for claim 2, is now applicable to claim 1. If Defendants have not procured rebuttal evidence this does not show prejudice, rather it demonstrates Defendants infringe the '248 Patent even under their own incorrect interpretation of the Court's claim construction.

The only other prejudice claimed by Defendants is that Dr. Moon's purported new infringement theory affected their ability to identify and select prior art. Again, this claim of prejudice is unsupportable. Defendants have known of the ▇ theory since IV served its initial infringement contentions at the beginning of 2015. Defendants also knew that IV intended to rely on ▇ with respect to claim 1 since, at least, September 28, 2016, a month before opening expert reports were served. Ex. 6. Thus, contrary to their unsupported claim of prejudice, Defendants had more than sufficient time to locate relevant prior art and to select that prior art for their opening expert report. *See Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS, 2015 WL 5568621, at *1-2 (D. Del. Sept. 22, 2015) (denying motion to strike when "whatever prejudice Plaintiff may have suffered (or will suffer) is outweighed by other factors, including the importance of the information Plaintiff seeks to strike.").

3. **Factor 3: Permitting Dr. Moon's Opinion Would Not Disrupt an Orderly and Efficient Trial**

Trial in this case is not scheduled until late July. Rebuttal expert reports are not due until December 21, 2016. Thus, Defendants' expert can still offer an opinion rebutting Dr. Moon. Dr. Moon's Opinion will not, therefore, disrupt an orderly and efficient trial.

4

### 4. Factors 4-5: IV Has Not Acted In Bad Faith or Failed To Disclose Important Evidence

IV introduced its theory regarding ▬ in its initial infringement contentions. That theory has not changed since then. On the other hand, Defendants provided no meaningful non-infringement contentions until the close of discovery. And, even then, only two weeks later IV informed Defendants that its ▬ theory rebutted those late disclosed non-infringement contentions. *See UCB, Inc. v. KV Pharm. Co.*, 692 F. Supp. 2d 419, 423 (D. Del. 2010) ("The Court concludes that striking the supplemental report is not warranted because its assertions are consistent with Dr. Byrn's prior statements and it was entered to address Defendants' summary judgment motion. Thus, Defendant will not be prejudiced by the admission of the supplemental report."). If Defendants had timely supplemented their non-infringement contentions, IV would have had an opportunity to incorporate its contentions for claim 2 into claim 1 earlier. There is no bad faith on the part of IV here where Dr. Moon's opinion is directly responsive to the last minute contentions served by Defendants.

### 5. Factor 6: The Importance of Dr. Moon's Opinion Weighs against Striking That Opinion

Obviously, opinions regarding the core issue of infringement are of great importance in a patent case. That is particularly true here, where Defendants seek to preclude Dr. Moon and IV from rebutting untimely non-infringement arguments. This factor, therefore, weighs strongly against striking the opinion. *See, e.g., Power Integrations*, 763 F. Supp. 2d at 692 ("Exclusion of critical evidence, such as an expert report on infringement, is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.").

### III. Conclusion

Defendants provide no showing that IV engaged in the flagrant disregard of a court order, willful deception, bad faith, or incurable prejudice that justifies striking Dr. Moon's opinion. Indeed, they failed to address the *Pennypack* factors at all. Given the importance of the evidence, the lack of prejudice and dilatory conduct of Defendants, there is no cause for granting the extreme sanction of striking part of Dr. Moon's expert report. Accordingly, IV respectfully requests that the Court deny Defendants' motion to strike portions of Dr. Moon's report.

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc: Counsel of Record (via E-File)